IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| DEVIN G. NUNES,<br><br>    Plaintiff,<br><br>v.<br><br>RYAN LIZZA and HEARST MAGAZINE MEDIA, INC.,<br><br>    Defendants. | **Related Case No. 5:19-cv-04064-CJW-MAR (N.D. Iowa)** |
| RYAN LIZZA and HEARST MAGAZINE MEDIA, INC.,<br><br>    Petitioners,<br><br>v.<br><br>TRUMP MEDIA & TECHNOLOGY GROUP CORP.,<br><br>    Respondents. | **Misc. Case No. _____** |

**PETITIONERS RYAN LIZZA AND HEARST MAGAZINE MEDIA, INC.'S MOTION TO COMPEL RESPONDENT TRUMP MEDIA & TECHNOLOGY GROUP CORPORATION'S COMPLIANCE WITH SUBPOENA**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Petitioners Ryan Lizza and Hearst Magazine Media, Inc. ("Petitioners") respectfully move this Court for an order compelling Respondent Trump Media & Technology Group Corporation ("TMTG") to comply with a subpoena *duces tecum* (the "Subpoena"), *see* July 22, 2022 Declaration of Nathaniel S. Boyer ("Boyer Decl."), Ex. A, served on TMTG in the matter of *Devin G. Nunes v. Ryan Lizza et al.*, No. 5:19-cv-04064-CJW-MAR (N.D. Iowa) (the "Action"), and overruling TMTG's objections to Request Nos. 2, 3, 4, 5, 6, and 7 in the Subpoena.

1

## SUMMARY

Devin Nunes, a former Congressman, has sued Petitioners for defamation. The essence of a defamation action is to seek redress for reputational harm. Petitioners' Subpoena seeks relevant information regarding that supposed reputational harm.

The Action concerns a 2019 tweet by Lizza. Nunes says this tweet caused him no less than $75 million in reputational harm. He complains that, due to the tweet, he has lost professional opportunities. Yet Nunes was later hired by TMTG to be its Chief Executive Officer.

Nunes's hiring is inconsistent with his claimed reputational harm, a central issue in his Action. Petitioners therefore subpoenaed TMTG, seeking documents relating to its recruitment and hiring of Nunes. Petitioners anticipate that the subpoenaed documents will show that Nunes has not suffered reputational harm. They will instead show that Nunes, a recent recipient of the Presidential Medal of Freedom, maintains a sterling reputation among people who matter most to him: Those willing to pay him a lot of money to do an important job, in the limelight, as part of a project that advances political objectives.

Although the relevance of the requested documents is obvious, TMTG responded to the Subpoena with evasive and improper objections and responses. It refused to remedy the defects in its responses or meaningfully meet and confer with Petitioners. It refused to produce a single document. Its objections should be overruled, and it should be ordered to produce all documents responsive to the requests at issue.

## PROCEDURAL HISTORY

***Devin Nunes Sues for Defamation***. In 2018, Nunes was a Congressman representing California's 22nd Congressional District. Boyer Decl., Ex. B ¶ 4. Serving since 2003, he was the ranking Republican member on the House Permanent Select Committee on Intelligence and,

in 2018, was the Committee's Chairman. *Id.* ¶ 4.

On September 30, 2018, Hearst published on Esquire.com an article, by Lizza, entitled *Devin Nunes's Family Farm Is Hiding a Politically Explosive Secret*, which is available at https://www.esquire.com/news-politics/a23471864/devin-nunes-family-farm-iowa-california/. Boyer Decl., Ex. C (the "Article"). The Article was also published in the November 2018 issue of *Esquire* magazine. *Id.*, Ex. D. The first 14 paragraphs of the Article describe how Nunes has made his family's dairy farming in California part of his political persona. The Article then reveals that "[t]he Nunes family dairy of political lore—the one where his brother and parents work—isn't in California. It's in Iowa," the family having moved their operations to Iowa more than a decade ago. *Id.*, Exs. C, D. The Article then shifts its focus to the dairy industry in Iowa and the Nunes family farm in particular. *Id.*

In 2019, Nunes initiated the Action, suing Petitioners for defamation, challenging 12 statements in the Article. *See id.*, Ex. E. The Action was dismissed by the district court, with prejudice, in August 2020. *Id.* On appeal, the United States Court of Appeals for the Eighth Circuit affirmed the dismissal of the Action as it related to all the express statements Nunes challenged. But the court revived Nunes's Action on a narrow theory: That (i) the Article supports the defamatory implication that Nunes "conspired or colluded with his family and with others to hide or cover-up" the fact that Plaintiff's family's dairy farm, NuStar Farms, "employs undocumented labor," and that, (ii) although the Article itself was not actionable, Nunes had plausibly alleged a claim for defamation arising from a November 20, 2019 tweet, by Lizza, which linked to the Article. *Nunes v. Lizza*, 12 F.4th 890, 895-901 (8th Cir. 2021).

On remand, Nunes alleges that the publication of this defamatory implication caused him to sustain $75 million in compensatory damages. Boyer Decl., Ex. B, at 30. These "money

3

damages," *id.* ¶ 3, including "damage and injury to [his] personal and professional reputations," *id.* ¶ 51.  The Action is now in discovery.  *Id.*, Ex. E.

**Devin Nunes Leaves Congress for TMTG**.  On January 1, 2022, Nunes left Congress to serve as the CEO of TMTG, the principal product of which is "Truth Social," a social media platform.  *Id.*, Ex. F.  TMTG is a privately held Delaware corporation.  *Id.*, Ex. G.  It is proposed to go public by merging with Digital World Acquisition Corporation ("DWAC"), a special purpose acquisition company.

It appears that Nunes has received and/or will receive significant compensation for this position.  DWAC's recently filed S-4 states that Nunes is being paid "an annual base salary of $750,000 (subject to increase to $1,000,000 effective as of the second anniversary of the employment start date)," and is also eligible "to participate in the annual bonus plan, if any."  *See* https://www.sec.gov/Archives/edgar/data/0001849635/000119312522150801/d226205ds4.htm, at p. 250.  Nunes has also received "an initial incentive equity grant of 145,000 Restricted Stock Units ('RSUs') of TMTG's Common Stock that will vest over two years," for which he will presumably receive his pro rata share of DWAC's $875 million in payment to acquire all of TMTG's outstanding shares, if and when the merger closes.  *Id.*[1]

**The Subpoena, and TMTG's Response**.  On April 8, 2022, the Subpoena was served on TMTG's registered agent for service of process,[2] with a return address in West Palm Beach, a short distance from TMTG's corporate headquarters in Palm Beach, Florida.  *See* Boyer Decl.,

---

[1]  The Merger Agreement, filed with the SEC, shows that TMTG will receive approximately $875 million in value in consideration for selling all of its outstanding shares to DWAC, which at present has a market capitalization of 1.145 billion.  *See* https://www.sec.gov/Archives/edgar/data/1849635/000119312521308146/d230221dex21.htm, ¶ 1.8.

[2]  Served concurrently with the Subpoena was a separate subpoena for TMTG's deposition testimony by its corporate representative.  Boyer Decl. ¶ 3.  Petitioners and TMTG agreed to adjourn this deposition *sine die*, to be rescheduled once Petitioners "receive the documents," according to TMTG's counsel.  As described below, no documents have been produced.

4

Exs. A, G, H.  The Subpoena, which has eight requests (the "Requests," each a "Request"), seeks various categories of documents concerning the hiring process for the role of CEO of TMTG, and the recruitment, selection, hiring, and engagement of Nunes for the position (*see* Requests No. 2-7, described below).  *Id.*, Ex. A.

After Petitioners granted TMTG two extensions of time (for an additional five weeks) to respond to the Subpoena, *id.*, Ex. I, TMTG served its responses to the Subpoena on May 27, 2022, *id.*, Ex. J (the "Responses").  In its Responses, TMTG claimed to have no documents responsive to Request No. 1.  *Id.*  TMTG lodged objections to Requests Nos. 2-7, *id.*, which are the six Requests at issue in this Motion.  (Petitioners are not seeking to compel production of the document that would be responsive to Request No. 8.)  TMTG did not produce a single document.  *Id.* ¶ 14.

Counsel for Petitioners conferred with TMTG's counsel on June 2, 2022.  *Id.* ¶ 13.  Petitioners' counsel explained the relevance of each Request, and provided TMTG's counsel with guidance on what sorts of materials would be responsive, noting that examples are included in the Requests themselves.  *Id.*  TMTG's counsel said he'd confer with his client.  *Id.*

Petitioners' counsel followed up with TMTG's counsel several times until, on June 23, 2022, TMTG's counsel responded:  "It is TMTG's position that it has responded to the subpoena with proper objections and it stands by said objections."  *Id.*, Ex. K.  TMTG has not produced any documents in response to the Subpoena.  *Id.* ¶ 14.

## ARGUMENT

There is no dispute that the Subpoena was duly served on TMTG's registered agent for service of process.  *See* Fed. R. Civ. P. 45(b); Boyer Decl., Exs. H (affidavit of service), J (TMTG's Responses, joining issue with no objection to service).  There is also no dispute that the Subpoena is procedurally proper, listing a location for production that is within 100 miles of

5

where TMTG "resides" or "regularly transacts business." *See* Fed. R. Civ. P. 45(c)(2)(A); Boyer Decl., Exs. A, J (TMTG's Responses, joining issue with no objection to place of compliance).[3]

This matter therefore turns on whether the objections set forth in TMTG's Responses have any merit. They do not. The objections should be overruled, and the Court should compel TMTG to promptly produce the documents responsive to the Requests described below.

### A. Legal Standard.

Permissible discovery extends to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Discovery can be taken by third-party subpoena, so long as the subpoenaing party avoids imposing undue burden or expense on the subpoenaed third party. *See* Fed. R. Civ. P. 45(d)(1). "[T]he scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Am. Fed'n of State, Cnty. & Mun. Emps. (AFSCME) Council 79 v. Scott*, 277 F.R.D. 474, 476 (S.D. Fla. 2011). The party seeking to enforce the subpoena bears the burden of proving relevance, and the party opposing the subpoena bears the burden of proving that the subpoena presents an undue burden. *See Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, No. 15-CIV-24363, 2018 WL 1456614, at *5 (S.D. Fla. Mar. 23, 2018).

---

[3] According to corporate filings at the time the Subpoena was served, TMTG's corporate headquarters share an address with the Mar-a-Lago Resort in Palm Beach, Florida, which is within this district and very near the return address for the Subpoena. *Id.*, Ex. G. After the Subpoena was served, TMTG filed paperwork with the Florida Secretary of State listing its "principal address" as being in Sarasota, Florida (although there is a typographical error in the street address), which is embraced by the Middle District of Florida. This distinction does not appear to be relevant here. Regardless of whether TMTG has recently opened an office in Sarasota, TMTG has not objected to the Subpoena on the grounds that it did not and/or no longer "resides" and/or "regularly transacts business" in this district. *See* Fed. R. Civ. P. 45(c)(2)(A).

> **B. Request Nos. 2, 3, 4, 5, 6, and 7, Which Call for Documents Relating to Recruitment for the Position of CEO and Nunes's Hiring, Are Relevant and Proportional, and TMTG's Objections Should Be Overruled.**

There are six Requests at issue. They are addressed *seriatim* below pursuant to Local Rule 26(g)(1):

> **REQUEST NO. 2.**     All documents relating to the solicitation and recruitment of candidates for the position of Chief Executive Officer of TMTG, including but not limited to communications with or about candidates or potential candidates, job descriptions, job posting, job listings, and job application forms.
>
> **Response**: TMTG objects to this Request as unduly burdensome and overly broad as to timeframe. Specifically, this Request seeks information from the beginning of time to the present. In addition, TMTG objects to this Request as irrelevant and not proportional to the needs of the case. Specifically, the information requested has no bearing on any of the claims or defenses in the subject litigation.
>
> **(**TMTG has not articulated additional grounds supporting these objections and has not produced and documents responsive to this Request.)

This Request seeks relevant information. Nunes alleges that the publication of the defamatory implication at issue in the Action caused him to sustain "money damages," Boyer Decl., Ex. B ¶ 3, which include "damage and injury to [his] personal and professional reputations," *id.* ¶ 51. This is consistent with what a defamation plaintiff must show under applicable California law. *See* Cal. Civ. Code § 45. Whether Nunes's reputation was damaged as a result of the allegedly libelous tweet is a central issue in the Action.

This Request seeks documents regarding this central issue. Request No. 2 relates to TMTG's efforts to recruit a CEO; these documents will show the qualities TMTG sought in its CEO, and why Nunes was a fit for this important role, notwithstanding his professional reputation having been supposedly severely tarnished by a tweet.

These Requests are also proportional to the needs of the Action. Nunes is seeking $75 million in compensatory damages from Petitioners. In a case of this magnitude, the discrete

categories of documents sought by this Subpoena are proportional.  TMTG has offered no explanation for why they would be disproportional, or why they impose an undue burden.

The close relationship between TMTG and Nunes is also notable; TMTG is not a typical third-party subpoena recipient.  *See Democratic Republic of Congo v. Air Cap. Grp., LLC*, No. 12-CIV-20607, 2018 WL 324976, at *3 (S.D. Fla. Jan. 8, 2018) ("close relationship" between subpoena recipient and party weighs in favor of compelling production and overruling objections by third party) (citing and quoting *Bozo v. Bozo*, No. 12-CV-24174, 2013 WL 12128680, at *2 (S.D. Fla. Aug. 16, 2013)); *see also In re Adler, Coleman Clearing Corp.*, No. 06-80157-CIV, 2008 WL 11411961, at *52 (S.D. Fla. July 31, 2008) ("close relationship" between party and subpoena recipient make it likely that subpoena recipient possesses responsive information).

Nunes is TMTG's highest-ranking employee, with substantial responsibilities to the company.  And yet, TMTG is perfectly fine with Nunes's desire to prosecute this defamation suit, which will result in Nunes spending two weeks away from his duties as CEO attending a trial in western Iowa, answering questions and hearing testimony about the extensive hiring of undocumented workers on his family's farm.  Perhaps TMTG believes Nunes's Quixotic defamation actions are good for its brand.[4]  Regardless, if TMTG and its board—on behalf of

---

[4]     TMTG's "vision" includes "counter[ing]" "the mainstream media," which advances a "woke ideology."  *See* https://www.tmtgcorp.com/.  Like his employer, Nunes has also taken the fight to "the mainstream media":  In addition to the Action, he has filed at least seven other defamation suits against news organization, in which he seeks more than $1,085,000,000 in reputational damages.  *See, e.g.*, *Nunes v. WP Company, LLC*, No. 3:20-cv-146 (E.D. Va.), as transferred to the United States District Court for the District of Columbia, No. 1:20-cv-1403, and as appealed to the United States Court of Appeals for the District of Columbia Circuit, No. 20-7121 (alleging in operative complaint that he sustained "$250,000,000.00" in compensatory damages); *Nunes v. WP Company, LLC*, No. 3:20-cv-1405 (E.D. Va.), as transferred to the United States District Court for the District of Columbia, 1:21-cv-00506; *Nunes v. Cable News Network, Inc.*, No. 3:19-cv-889 (E.D. Va.), as transferred to the United States District Court for the Southern District of New York, No. 1:20-cv-3976, and as appealed to the United States Court of Appeals for the Second Circuit, No. 21-637 (alleging in operative complaint that he sustained "$435,000,000" in compensatory damages); *Nunes v. NBCUniversal Media, LLC*, No. 4:21-cv-

itself, its investors, and holders of its soon-to-be publicly traded shares (should the merger close)—are willing to bear the burdens associated with allowing their CEO to be a defamation plaintiff, then among those burdens is an obligation to respond to this modest Subpoena seeking relevant documents concerning its CEO's case.

TMTG's only other objection is to complain that the Request calls for documents "from the beginning of time." Yet TMTG did not exist until February 2021, *see* Boyer Decl., Ex. G, and Nunes's hiring wasn't announced until December 2021, *see id.*, Ex. F. These facts limit the scope of the Request to a narrow time frame.

> **REQUEST NO. 3.**   All documents relating to TMTG's solicitation, recruitment, and consideration of [Nunes] for employment with TMTG, including but not limited to communications (both internal to TMTG and with third parties) regarding [Nunes]'s candidacy and qualifications for the position of Chief Executive Officer.
>
> **Response**: TMTG objects to this Request as unduly burdensome and overly broad as to timeframe. Specifically, this Request seeks information from the beginning of time to the present. In addition, TMTG objects to this Request as irrelevant and not proportional to the needs of the case. Specifically, the information requested has no bearing on any of the claims or defenses in the subject litigation.
>
> **(**TMTG has not articulated additional grounds supporting these objections and has not produced documents responsive to this Request.)

This Request is proportional for the same reasons Request No. 2 is proportional. TMTG's objection to the timeframe should be overruled, for the same reasons it should be overruled in connection with Request No. 2.

---

608 (E.D. Tex.), as transferred to the United States District Court for the Southern District of New York, No. 1:22-cv-1633; *Devin Nunes Campaign Committee v. Seeley*, No. 279766 (Cal. Super. Ct., Tulare Cnty.); *Devin G. Nunes v. Twitter Inc.*, No. CL19001715-00 (Va. Circuit Ct., Henrico Cnty.) (alleging in operative complaint that he sustained "$250,000,000.00" in compensatory damages); and *Devin G. Nunes v. The McClatchy Company*, No. CL19000629-00 (Va. Circuit Ct., Albermale Cnty.) (alleging in operative complaint that he sustained $150,000,000" in compensatory damages).

The information sought is relevant. This Request calls for documents relating to TMTG's courting of Nunes for the role of CEO. These documents will show that TMTG, undeterred by the allegedly defamatory tweet, thought highly of Nunes and wanted to hire him. This would show that Nunes's reputation was not damaged by the tweet.

> **REQUEST NO. 4.** All documents relating to the hiring and onboarding of [Nunes] as an employee of TMTG, including but not limited to offer letters to [Nunes] and [Nunes]'s acceptance thereof.
>
> **Response**: TMTG objects to this Request as both overly broad and vague. Specifically, TMTG does not know what Defendants mean by "relating to the hiring an onboarding of Devin as an employee of TMTG."
>
> **(**TMTG has not articulated additional grounds supporting these objections and has not produced documents responsive to this Request.)

The information sought is relevant. This Request relates to TMTG engaging Nunes for the role; these documents will show that TMTG valued Nunes so highly that it was willing to pay him, and agreed to pay him, handsomely. This is inconsistent with Nunes's allegation that his reputation was harmed by the allegedly defamatory tweet.

This Request is also proportional, for the same reasons Request Nos. 2 and 3 are proportional. TMTG's objection that it does know what "hiring and onboarding" means is meritless. To the extent it is not self-evident, the Request itself provides examples of the documents this Request calls for (namely, offer letters to Nunes and Nunes's acceptance thereof). This was explained to TMTG's counsel on the June 2 meet and confer, *id.* ¶ 13, and it is unclear why TMTG continues to be so confused that it is unable to produce a single document in response to the Request.

> **REQUEST NO. 5.** All agreements between [Nunes], on the one hand, and TMTG and/or DWAC, on the other hand, including but not limited to any offer letters or counteroffers, engagement agreements, employment contracts, and/or any contracts relating to compensation or indemnification of any kind.

> **Response**: TMTG objects to this Request to the extent it seeks information from a third party – Digital World Acquisition Corp. In addition, TMTG objects to this Request as it seeks confidential and proprietary information. TMTG also objects to this Request as irrelevant and not proportional to the needs of the case. Specifically, the information requested has no bearing on any of the claims or defenses in the subject litigation. Finally, TMTG objects on the basis that any document to which Devin Nunes is a signatory can be requested from Mr. Nunes, who is a party to this litigation.
>
> **(**TMTG has not articulated additional grounds supporting these objections and has not produced documents responsive to this Request.)

The information sought is relevant, for the same reasons the information sought by Request No. 4 is relevant. The Request is proportional, for the same reasons Request Nos. 2, 3, and 4 are proportional.

TMTG's other objections should be overruled. Obviously, the Subpoena does not seek information from DWAC. It is addressed to TMTG, and seeks documents within TMTG's possession, custody, and control. Regarding confidentiality: Whatever the merit of this concern, there is a protective order entered in the Action concerning the production and use of confidential materials. TMTG may produce documents pursuant to that protective order, a copy of which was appended to the Subpoena that was served on TMTG. *See* Boyer Decl., Ex. A; *Emissive Energy Corp. v. Novatac, Inc.*, No. 09-61215-MC, 2009 WL 2834841, at *2 (S.D. Fla. Aug. 27, 2009) (in miscellaneous action regarding production in response to a subpoena, "the Confidentiality Agreement from the [out-of-district underlying] case . . . will ameliorate any prospective harm to Movant associated with production of the subpoenaed information."); *In re K-Dur Antitrust Litig.*, No. 03-21589-CIV, 2003 WL 27375780, at *2 (S.D. Fla. Aug. 21, 2003) (overruling objection expressing "concern about the confidentiality of the materials in question," as that concern "is addressed by the implementation of an appropriate confidentiality order, which is already in place in this case").

TMTG's objection that some of responsive documents are attainable from Nunes himself should also be overruled. Nunes has produced only one document that would be responsive to this Request—his employment agreement—and claims to possess nothing else that might be responsive to this Request. Boyer Decl. ¶ 15. And upon reviewing this document, Petitioners' counsel have questions about its accuracy and completeness. *Id.* Reviewing TMTG's copy of the agreement may address those concerns, and it is not a burden for TMTG to produce a single, readily available document. *See Viacom Int'l, Inc. v. YouTube, Inc.*, No. C 08-80129, 2008 WL 3876142, at *3 (N.D. Cal. Aug. 18, 2008) ("There is no general rule that [a party] cannot seek nonparty discovery of documents likely to be in [a party's] possession," and such production is appropriate where "there is reason to believe that the files of the third party may contain different versions of documents, additional material, or perhaps, significant omissions" (citation omitted)). Regardless, Request No. 5 calls for more than Nunes's employment agreement.

> **REQUEST NO. 6.** All documents relating to remuneration for [Nunes], including but not limited to negotiations regarding compensation or the process for setting compensation.
>
> **Response**: At the outset, Devin Nunes' compensation as CEO of TMTG is publicly available information. To the extent Defendants non-public information related to Mr. Nunes' compensation, TMTG objects to this Request as it seeks confidential and proprietary information. TMTG further objects to this Request as irrelevant and not proportional to the needs of the case. Specifically, the information requested has no bearing on any of the claims or defenses in the subject litigation. Finally, TMTG objects on the basis that any document to which Devin Nunes is a signatory can be requested from Mr. Nunes, who is a party to this litigation.
>
> **(**TMTG has not articulated additional grounds supporting these objections and has not produced documents responsive to this Request.)

The information sought is relevant, for the same reasons the information sought by Request Nos. 4 and 5 are relevant. The Request is proportional, for the same reasons Request Nos. 2, 3, 4, and 5 are proportional. TMTG's objections to confidentiality, and on the grounds

12

that some documents are attainable from Nunes himself, should be overruled for the same reason they should be overruled in connection with Request No. 5.

TMTG's objection that his compensation is publicly available through DWAC's filings should be overruled. The SEC filings referenced above expressly refer to Nunes's employment agreement for details concerning his compensation, and in any event, this Request calls for than what is referenced in the SEC filings. For example, this Request calls for documents relating to the negotiation of Nunes's compensation. These documents should demonstrate that nobody involved in negotiating Nunes's generous compensation package "discounted" Nunes's compensation as a result of the tweet.

> **REQUEST NO. 7.** All communications with DWAC regarding [Nunes], including but not limited to communications concerning [Nunes]'s candidacy and qualifications for the position of Chief Executive Officer.
>
> **Response**: TMTG objects to this Request as unduly burdensome and overly broad as to timeframe and subject matter. Specifically, this Request seeks information from the beginning of time to the present – and is unlimited as to scope. Finally, TMTG objects to this Request as irrelevant and not proportional to the needs of the case. Specifically, the information requested has no bearing on any of the claims or defenses in the subject litigation.
>
> **(**TMTG has not articulated additional grounds supporting these objections and has not produced documents responsive to this Request.)

The Request is proportional, for the same reasons Request Nos. 2, 3, 4, 5, and 6 are proportional. The information sought by this Request is relevant; it will presumably capture documents in which TMTG spoke highly of Nunes to DWAC (the SPAC with which it intends to merge), further demonstrating that Nunes has been unharmed by the allegedly defamatory tweet.

## CONCLUSION

For the foregoing reasons, the Court should overrule TMTG's objections to Request Nos. 2, 3, 4, 5, 6, and 7 in the Subpoena, and should order TMTG to produce all documents responsive to these Requests within 14 days.

Dated: July 22, 2022.

Respectfully Submitted,

SHULLMAN FUGATE PLLC

/s/ *Deanna K. Shullman*
Deanna K. Shullman
 dshullman@shullmanfugate.com
 Florida Bar No. 514462
Rachel E. Fugate
 rfugate@shullmanfugate.com
 Florida Bar No. 144029
2101 Vista Parkway, Suite 4006
West Palm Beach, Florida 33411
Tel: (844) 554-1354


Nathaniel S. Boyer*
 nathaniel.boyer@hearst.com
THE HEARST CORPORATION
Office of General Counsel
300 West 57th Street
New York, New York 10019
Telephone: (212) 649-2030
Facsimile: (212) 554-7000

*Pro Hac Vice Application Forthcoming*

**Attorneys for Petitioners Ryan Lizza and Hearst Magazine Media, Inc.**